**BUTTONCRAFT CO., Inc., et al.**

v.

**UNITED STATES.**

Protest No. 299218–K.

United States Customs Court, Third Division.

Dec. 23, 1958.

———◆———

Siegel, Mandell & Davidson, New York City (Sidney Mandell, New York City, of counsel), for plaintiffs.

George Cochran Doub, Asst. Atty. Gen., William J. Vitale, Trial Atty., New York City, for defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges.

DONLON, Judge.

Certain shell buttons, imported from the Philippines, were entered at the port of New York in several shipments between August 19, 1952, and November 27, 1952, as duty free under section 201 of the Philippine Trade Act of 1946. (79th Cong., P.L. 371; 60 Stat. 141.) 22 U.S.C.A. § 1251. Section 201 provides that during the period from the day after the date of enactment of the Philippine Trade Act of 1946 (enactment was April 30, 1946) to July 3, 1954, both dates inclusive, "Philippine articles" shall be admitted into the United States free of ordinary customs duty.

The collector assessed ordinary customs duty under paragraph 1509 of the Tariff Act of 1930, 19 U.S.C.A. § 1509, presumably on some finding that these buttons are not "Philippine articles," as claimed.

That is the sole issue before us in these three protests, which have been consolidated for trial.

Some of the official papers, including the entries, invoices, certificates of origin, and certain permits to ship, were offered in evidence and are before us. Plaintiffs called as their witness Mr. Louis Rifkin, who identified himself as part owner, director, and former president for 25 years, down to 1956, of Shell-

Craft & Button Corp. of Manila, Philippine Islands. Until 1956, Mr. Rifkin lived in Manila and was familiar with the operations and activities of his company, which manufactured pearl buttons and also shell novelties. Particularly with reference to the year 1952, witness Rifkin testified that all operations of Shell-Craft were under his direction, that he was familiar with merchandise shipped to the United States, and that the buttons which are the subject of the instant protests were manufactured in the Philippines by his company and under his direction.

As to the material from which these buttons were made, the witness said it is mostly troca, but also mother-of-pearl and snail shell, and that the shells which were used were bought locally in the Philippines, where they are found in various of the southern islands. On direct examination, the witness was emphatic that, in his manufacturing operations in the Philippines, he used only Philippine shells.

On cross-examination, Mr. Rifkin testified that, on one occasion, he imported 394 bags of shells into the Philippines from the United States; that these shells were shipped to his company by John L. Rie, Inc., of Tuckahoe, N. Y., acting for Excelsior Pearl Works, Inc., one of the plaintiffs herein; that these were Philippine shells which Shell-Craft had earlier shipped to Excelsior Pearl Works, Inc.; and that, on their return to the Philippines, he examined the bags and ascertained that these were the same Philippine shells which he had previously shipped to Excelsior.

Defendant introduced in evidence a carbon copy of a letter, purporting to have the signature of Mr. John L. Rie and addressed to the supervising customs agent in New York, dated October 2, 1952, relative to an exportation from the United States in January 1952 on the steamer "Sir John Franklin." In this letter, Mr. Rie stated that he inspected the shells at the time (presumably the time of shipment from the United States) and "felt that the greater proportion of this shell, approximately 90% was of Philippine Origin." However, he added: "According to the latest deliveries from Manila, and according to a very rough record book which we keep not too carefully because it has no bookkeeping value, it would appear that our declaration may have been wrong because it would show about 60% Shell of non Philippine Origin."

Defendant did not produce Mr. Rie to testify, and counsel for defendant did not examine witness Rifkin regarding his knowledge of the matters stated in the letter.

The letter is without probative value, Sylvania Industrial Corp. v. United States, 22 CCPA 230. Moreover, it states at most that an earlier declaration "may have been wrong." In contrast, witness Rifkin on redirect and re-cross-examination, categorically reaffirmed his prior testimony that these shells which were imported from the United States were shells of Philippine origin.

In our view of the law that is applicable to this case, our decision would not be different even if we held, as we do not, that the letter has the probative value for which defendant argues.

These protests were argued by plaintiffs on an erroneous citation of the applicable statute. The error in quoted language has been corrected by a memorandum of plaintiffs' counsel, dated November 19, 1958, but the arguments flowing from the error have not been revised to correspond with the correct language of the applicable statutory provision. Indeed, both plaintiffs and defendant appear to have the notion that it is essential to plaintiffs' case that the shells from which these buttons were made should be Philippine shells. Whatever the law may have been earlier, when the Philippines were a dependency of the United States, that was not the law at the time of importation of these buttons, when the Philippines had acquired the status of an independent republic.

As noted earlier in our opinion, the Philippine Trade Act of 1946 granted to Philippine articles the right of entry into

the United States during the period from May 1, 1946, to July 3, 1954, both dates inclusive, free of ordinary customs duty. The term "Philippine article" is defined in section 1360(a) (4) (22 U.S.C.A.), in relevant part as follows:

"The term 'Philippine article' means an article which is the product of the Philippines, *unless*, in the case of an article produced with the use of materials imported into the Philippines from any foreign country (except the United States) the aggregate value of such imported materials at the time of importation into the Philippines was more than twenty per centum of the value of the article imported into the United States, the value of such article to be determined in accordance with, and as of the time provided by, the customs laws of the United States in effect at the time of importation of such article. * * *" [Emphasis supplied.]

The evidence before us is that these buttons were manufactured in the Philippines. The buttons are, therefore, products of the Philippines. They are, then, Philippine articles, *unless* they were produced with the use of materials imported into the Philippines from a foreign country, other than the United States. (The facts here do not require us to consider the statutory provision as to the aggregate value of materials imported into the Philippines from a foreign country other than the United States.)

The record before us shows that the buttons were manufactured, in whole or in part, from shells of local Philippine origin. If, as to these buttons, part of the materials used were imported shells, such shells were imported into the Philippines from the United States. The record before us negatives any finding that shells used in the production of these buttons were imported into the Philippines from any foreign country other than the United States.

In view of the clear language Congress used in the Philippine Trade Act of 1946 to express its intention as to what are Philippine articles and what is the exception to that status, it is hard to understand the evident confusion on the part of the customs service and of both counsel. Both counsel state the issue to be whether in the production of these buttons in the Philippines imported materials were used *which are the products of a foreign country*, other than the United States. Defendant's brief so states the issue, after citing the pertinent provisions of section 1360(a) (4), among which provisions there is no reference whatever to the country in which imported materials are produced, but merely a reference to the country from which the materials are imported into the Philippines.

Neither party cites any case as authority for the construction of the statute for which it argues. There is no ambiguity here such as to support judicial interpolation, into the statute, of the language for which the parties argue. To do this would be to ascribe to Congress an intention quite different from the intention which Congress has stated. It is our function, as judges, to interpret congressional language and to apply the congressional intention to the facts before us. It is not our function to write the law, and we shall not do so.

The record before us establishes that these buttons are Philippine articles, within the meaning of section 201 of the Philippine Trade Act of 1946, and that they were imported into the United States within the period during which that act granted to Philippine articles the right of entry into the United States free of ordinary customs duty.

Judgment will issue directing the collector to reliquidate these entries and to refund the ordinary customs duties unlawfully exacted.